THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* RAYMOND J. NORMAN, Appellant.

(Argued October 6, 1932; decided October 18, 1932.)

*Joseph Wheless* for appellant. The evidence shows **no** crime was committed, and that defendant is not guilty. (*People* v. *Miller*, 169 N. Y. 339; *People* v. *Baker*, 96 N. Y. 340; *Ranney* v. *People*, 22 N. Y. 413; *People* v. *Whitney*, 146 App. Div. 98.)

*Thomas C. T. Crain, District Attorney* (*Joshua Egelson* of counsel), for respondent. The People's case was proved beyond a reasonable doubt. (*People* v. *Miller*, 169 N. Y. 339; *People* v. *Herrick*, 13 Wend. 87; *People* v. *Cummins*, 153 App. Div. 93; 209 N. Y. 283; *People* v. *Seidenshner*, 210 N. Y. 341; *People* v. *Atlas*, 183 App. Div. 595.)

CRANE, J. The defendant is or was a clergyman connected with St. Peter's Mission located at 419 East Fourteenth street, New York city. The defendant appears to be the treasurer of this mission. The record is meager as to the nature of this organization, if it be an organization, but it is stated that this mission helps the poor and gave 12,000 meals in three months. The money is raised for this purpose by donation.

The defendant sold tickets for a dinner and dance to raise funds. The ticket read —"Annual dinner and dance by St. Peter's Mission. Wednesday evening, January 28th, 1931, Hotel Commodore. Music by Ben Birnie's Orchestra. Dinner at 8:30 P. M. sharp. Subscription, $15 per couple."

One Hughes on October 27, 1930, bought one of these tickets and gave it to his clerk or employee. Later, he charged the defendant with obtaining his money by false pretenses. The defendant was arrested, tried and convicted by the Special Sessions and the judgment of conviction has been affirmed by the Appellate Division, two of the justices dissenting, and one of them granting

leave to appeal to this court with a certificate of reasonable doubt.

We have examined the evidence and agree with the dissenting justices that there is no evidence to sustain a conviction, and that the information must be dismissed.

The information states in the first count common-law larceny, the stealing of fifteen dollars, the property of Hughes, and in the second count, the stealing of the money by the means of false pretenses which were alleged to be that the defendant falsely and fraudulently represented that prior to the 27th day of October, 1930, he had made arrangements for a dinner and dance to be tendered by St. Peter's Mission in the Hotel Commodore on the evening of January 28, 1931, and that by color of said false representations he obtained fifteen dollars from Hughes, whereas in truth and in fact the said defendant had not made any arrangements whatever for any dinner and dance to be tendered by St. Peter's Mission in the Hotel Commodore, nor did the tickets truthfully represent the facts.

Taking the uncontradicted evidence in the case, we find that St. Peter's Mission for conducting charity in Fourteenth street was an existing organization of some kind. The form of its organization is not stated, but one of the witnesses for the People states that he called at this mission in Fourteenth street and saw the defendant, who was the treasurer of it, and the statement of the defendant as to the nature of its work at this place is in no way contradicted. We have as a fact, therefore, that St. Peter's Mission was not a myth; it had an existence and was apparently doing charitable work. The fact that the defendant was treasurer of this organization, whatever it was, also appears conclusively. He sold the ticket to Hughes and the ticket contained the representations above given. Were they true or false? The representatives of the Hotel Commodore testified that the defendant had made arrangements with them

for a dinner and dance for about 500 people at the Hotel Commodore on the date stated, and this also is uncontradicted; in fact these witnesses were called for the People upon the prosecution.

The charge, therefore, of false representations cannot be sustained, for the representations alleged in the indictment to be false are in fact true.

It does appear that these arrangements made by Norman for the dinner and dance on January 28, 1931, were later postponed until March 11th, and that a notice to that effect had been sent to Hughes and others who had purchased tickets. No dinner and dance were given, the reason stated being that before the evening of January 28th had arrived, Norman had been arrested and prosecuted for larceny and false representations in collecting money for this affair and in consequence the project had fallen through.

The money received from the sale of these tickets was deposited in the bank in the name of the treasurer and subsequently drawn out by him, used in charitable work or else in his defense in the prosecution.

Here we have the complete statement of the case. If the tickets were sold for a dinner and dance, arrangements for which had been made by the defendant in connection with the work of the mission, there was no false pretense used in obtaining money as charged. The money received from the sale of tickets or, to be specific, from Hughes, was for the very purpose of carrying on the charitable work of the mission and could be used for that purpose. The defendant was under no legal duty to keep it intact or in the bank until after the dinner and dance had actually been given. Hughes never asked for the return of his money.

Therefore, in the use of the money there was no basis for finding him guilty of larceny, this fact standing alone.

If the dance were a mere subterfuge to obtain money unlawfully, Norman using the scheme as a cloak to hide

his real intentions to steal, then we would have a crime, but here we find the actual existence of a mission for charitable work conducted by the defendant who sought to obtain donations and money for the purpose by the sale of tickets for a dinner and dance to be given on January 28, 1931. He had actually made arrangements with the Hotel Commodore for this dinner and dance. Postponement was rendered necessary by his arrest and prosecution and the publicity attending upon them. The only fact standing against him is that between the time of collecting the money and January 28, 1931, he had withdrawn and used this money which, as we have said, was not in and of itself a larceny of Hughes' money or the fifteen dollars obtained from Hughes. That the dinner and dance and sale of tickets was a mere trick to get money, and that Norman never intended to give such an affair is a conclusion not justified by the evidence.

The judgment should, therefore, be reversed and the information dismissed.

POUND, Ch. J., LEHMAN, KELLOGG, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgment reversed, etc.